UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YOLANDA BURROWS,

    Plaintiff,

v.                                                                                    Case No. 05-74107

JOHN E. POTTER, Postmaster                              HONORABLE AVERN COHN
General, United States Postal Service,

    Defendant.

_____/

**MEMORANDUM AND ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**[1]

I. Introduction

This is an employment case. Plaintiff Yolanda Burrows, proceeding pro se, is suing defendant John E. Potter, Postmaster General of the United States Postal Service (USPS), under Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e and the Rehabilitation Act of 1973, 29 U.S.C. § 701 claiming discrimination on the basis of race (African-American), gender (female), metal disability (anxiety, major depression, post traumatic stress disorder), and retaliation for prior EEO activity. The claims surround events that occurred in 2001. Specifically, Burrows alleges discrimination and retaliation when:

    1.    On May 2 and May 21, 2001 she was instructed to return to work
    2.    On June 8, 2001 she was denied annual leave

---

[1]The Court originally scheduled this matter for hearing. Upon review of the parties' papers, however, the Court finds that oral argument is not necessary. See E.D. Mich. LR 7.1(e)(2).

    3.    On June 8, 2001 she was issued a notice of removal, when she was removed on July 7, 2001, and the arbitrator upheld her removal on November 16, 2001

    4.    On June 15, 2001 her health benefits were cancelled and on September 15, 2001 her life insurance was cancelled.

Before the Court is defendant's motion for summary judgment, to which Burrows has responded. For the reasons that follow, the motion will be granted.

## II. Background

The material facts as gleaned form the record follow.

### A. Burrows' Employment with the USPS

Burrows began working for the USPS in various capacities beginning in 1988. As a postal employee, she was a member of the postal union and the terms and conditions of her employment were governed by a collective bargaining agreement.

From 1988 to 1995, she held positions as a part-time employee and a transitional temporary employee in the main post office in downtown Detroit. In 1995, Burrows began working as a part-time flexible letter carrier in at the Farmington Hills post office. In the summer of 1998, she began a full-time letter carrier in Farmington Hills.

From March 1, 1997 through March 14, 1998, Burrows was on medical leave without pay due to job-related stress. She returned to work on March 16, 1998 but again went on extended leave for alleged stress on December 15, 1999.

While on medical leave, on June 20, 2000, defendant sent Burrows for a fitness for duty examination. The examining physician, Dr. Edward Klarman, determined that Burrows could return to work without restrictions. Burrows returned to work on October 16, 2000, working three days a week until December 11, 2000.

On December 11, 2000, Burrows attempted to cancel annual leave she had

scheduled for December 18 -24, 2000.  Her supervisor, Jan Pebley,[2] denied her request since annual leave had to be cancelled two weeks in advance.

Burrows remained off work completely after December 11, 2000 and submitted monthly medical notes from her doctor stating she was rendered emotionally disabled from working.  On December 12, 2000, Burrows filed a Workers Compensation claim, alleging an inability to work due to emotional stress as a result of a verbal attack or harassment at work on December 11, 2000.  The claim was rejected initially and throughout the administrative appeal process.

On April 13, 2000, Pebley requested that Burrows submit to a fitness for duty examination to determine if she could return to work.  Marlene Bowers (Bowers), the Postmaster General at the time, approved the request.  Burrows underwent the examination on April 27, 2001, again with Dr. Klarman.  Dr. Klarman opined that Burrows could return to work and did not have a psychiatric disability.

On May 2, 2001, Bowers sent Burrows a letter (singed by Pebley) informing her that she was fit for duty and should contact the office to obtain return to work instructions.  The letter also stated that if Burrows disagreed with the results of the examination, she could undergo another examination.  The letter further stated that a failure to report to work could result in discipline, including termination.

On May 11, 2001, Pebley spoke with Burrows by telephone regarding the May 2, 2001 letter.  Burrows declined to undergo another examination and Pebley instructed her to return to work on May 14, 2001.

---

[2]Jan Pebley is now deceased.  Her name appears in the record as Jan Webber and Jan Coulston.  For simplicity, she will be referred to as "Pebley."

Burrows failed to report to work on May 14.  On May 21, 2001, Bowers sent Burrows a letter (signed by Pebley) advising her that she was considered absent without leave (AWOL) and was being removed from the Postal Service.

On May 23, 2001, Bowers spoke with Burrows by telephone regarding the May 21, 2001 letter.  Burrows told Bowers she was tape recording their conversation.  Bowers told Burrows that she was not allowed to record the conversation per postal regulations and state law.

On June 7, 2001, Burrows was notified by the human resources department that her health benefits would be cancelled as a June 15, 2001 because she had been on leave without pay status for 365 days.  This determination was made in accordance with postal regulations.  Burrows was also informed that her health insurance coverage would be extended for only another 31 days and that during this time, she had the right to convert in an individual insurance contract with her insurance carrier.

On June 8, 2001, Burrows submitted a request for annual leave beginning June 18-22, 2001.  Bowers denied the request because no leave bids were available at the time.

Also on June 8, 2001, Burrows was issued a notice of removal based on her failure to meet the requirements of her position, i.e. being AWOL.  She was also charged with unauthorized taping of the May 23, 2001 phone conversation.  Both Bowers and Pebley signed the notice of removal.

On July 7, 2001, Burrow's removal became effective.  Burrows filed a grievance, which was denied.  On November 15, 2001, an arbitrator's hearing was held regarding the grievance.  On December 15, 2001, the arbitrator issued an award upholding

Burrows' removal.

On September 18, 2001, Burrows was notified by the human resource department that her group life insurance coverage was being cancelled because she had been on non-pay status for more than 12 months, per postal regulation. She was also informed she had 21 days to elect to convert her group life insurance to an individual policy.

### B. Administrative Proceedings Relevant to Burrows' Claims

On May 29, and June 13, 2001, Burrows sough EEO counseling relative to her claims of discrimination. On July 24, 2001, Burrows filed a formal complaint and later amended her complaint to include events after mid-June 2001.

On July 16, 2002, the EEO investigator completed her investigation. On July 18, 2002, Burrows requested a hearing before an administrative law judge (ALJ) from the EEOC. On April 20, 2003, following the completion of discovery, defendant filed a motion for summary judgment. On March 9, 2002, the ALJ issued a decision granting defendant's motion.

On April 9, 2004, the USPS issued a notice of final action stating it would implement the decision of the ALJ. Burrows appealed to the EEOC's Officer of Federal Operations, which on February 10, 2005, affirmed the final action. Burrows filed a motion for reconsideration which was denied on July 28, 2005.

On October 27, 2005, Burrows filed her complaint in federal court.

### III. Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50. Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings. Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52). The Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson,

477 U.S. at 255. Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

IV. Analysis

A. Exhaustion

Defendant does not dispute that Burrows exhausted her administrative remedies regarding the claims in her complaint, outlined above as four events. In her response to defendant's motion for summary judgment, however, Burrows states she is also seeking relief for two additional claims of discrimination: (1) on December 11, 2000 when Pebley forced Burrows to honor a contract she did not enter into willingly, and (2) on April 27, 2001 when Pebley required Burrows to undergo a fitness for duty examination.

Because exhaustion is a threshold issue, it must first be determined whether these additional claims are properly before the Court. It is clear that exhaustion of administrative remedies is a prerequisite for bringing claims of discrimination under federal law. Brown v. General Servs. Admin., 425 U.S. 820 (1976) (Title VII), Smith v. United States Postal Serv., 742 F.2d 257 (6th Cir. 1984) (Rehabilitation Act). If a plaintiff fails to show exhaustion, the claims must be dismissed. See Smith, 742 F.2d at 262.

As evidence of exhaustion of her December 11, 2000 claim, Burrows attached her response to a copy of a Final Agency Decision (FAD) issued on April 9, 2001 dismissing her complaint of discrimination regarding the December 11, 2000 claim. Burrows provided no documentation as to her April 27, 2001 claim.

Neither of these two additional claims have been properly exhausted. Although Burrows took some administrative action regarding her December 11, 2000 claim, there

is no evidence that she appealed the FAD nor that she filed a complaint regarding this claim within 90 days of receiving the FAD. As explained in defendant's papers, Burrows' failure to exhaust renders her claim regarding the December 11, 2000 event time barred.

There is no evidence in the record as to the April 27, 2001 claim. Burrows' conclusory allegation of exhaustion is insufficient to show exhaustion.

B. Burrows' Claims

1. General Standards Applicable for Race, Gender Discrimination and Retaliation Claims

A plaintiff may make out a case of employment discrimination and/or retaliation by presenting either direct or circumstantial evidence of discrimination. See Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000). Here, because there is no direct evidence of discrimination, the framework for analyzing a case supported by circumstantial evidence was established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The plaintiff has the initial burden of proving a prima facie case of discrimination by a preponderance of the evidence. McDonnell Douglas, 411 U.S. at 802. If the plaintiff succeeds in establishing a prima facie case, which creates a presumption that the defendant unlawfully discriminated against the plaintiff, the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its actions. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254-56 (1981). However, the ultimate burden of persuasion always remains with the plaintiff. St. Mary's Honor Ctr. v. Hicks, 113 S.Ct. 2742, 2747-48 (1993).

If the defendant is able to articulate a legitimate, nondiscriminatory reason for its actions, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons put forth by the defendant were not its true reasons but were a mere pretext for discrimination. McDonnell Douglas, 411 U.S. at 802. Pretext requires that the plaintiff come forward with evidence that the employer's reason for the employment action is false, but he need not present independent evidence that the proffered reason is pretext for racial discrimination, but rather that the proffered reason is unworthy of belief. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 148 (2000).

### 2. Race and Gender Discrimination - Prima Facie Case

A plaintiff may establish an initial prima facie case of discrimination by proving that (1) the plaintiff is a member of a protected group, (2) that she was subject to an adverse employment decision, (3) that she was qualified for the position, and (4) that she treated differently from similarly situated individuals outside of her protected class. Id. See Smith v. City of Salem, Ohio, 387 F..d 566 (6th Cir. 2004).

Defendant says that Burrows cannot make out a prima facie case because she cannot show that he was treated differently for the same conduct than a similarly situated employee. In order to satisfy this prong, a plaintiff must demonstrate that he and the employee are "similarly-situated in all respects." Mitchell v. Toledo Hospital 964 F.2d at 583.   [T]o be deemed "similarly situated" the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or

9

the employer's treatment of them for it.  Id.  The Court agrees.

Regarding the claims of discrimination with respect to being instructed to return to work on May 2 and May 21, 2001, Burrows has not identified any non-minority postal employee who received more favorable treatment or was otherwise similarly situated.

As to the claims arising out of being removed and having her health and life insurance benefits cancelled, Burrows identified several postal employees as alleged comparables.  They are: Pauline Tuomi, Jim Lewandowski, Michele Sumner, Carol Huber, Jere Isabel, Betty Decker, and Debra Read.  As the government points out in its papers, however, none of these individuals are similarly situated to Burrows.  While some employees faced removal proceedings, and some were in fact removed, none faced removal for the same reasons as Burrows (being AWOL and unauthorized tape recording of a conversation).  See pages 11-13 of defendant's brief in support of summary judgment.  As such, Burrows has not established a prima facie case of race or gender discrimination.

### 2.  Disability Discrimination - Prima Facie Case

To establish a prima facie case of disability discrimination under the Rehabilitation Act, a plaintiff must show that (1) she is an individual with a disability, (20 who was otherwise qualified to perform a job requirement, with or without reasonable accommodation, and (3) who was discriminated against solely because of the disability. Mahon v. Crowell, 295 F.3d 585, 589 (6th Cir. 2002).

Defendant says that Burrows has failed to make out a prima facie case because she cannot show that she was an individual with a disability.  Under the Rehabilitation Act, an individual with a disability is a person who has "a physical or mental impairment

which substantially limits one ore more of such person's major life activities." 29 C.F.R. § 1613.702(a). Although Burrows' doctor's notes said she suffers from anxiety and depression, she testified at deposition that she is not substantially limited in a major life activity. She testified that she is able to manage her rental properties, prepare tax returns, care for her grandmother, and continued to engage in a job search.

Moreover, assuming that Burrows cannot work because of a mental impairment, then the claim still fails. Burrows' alleged inability to work precludes her from establishing the second element of a prima facie case - that she was qualified for the job. In short, Burrows has not established a prima facie claim for disability discrimination.

### 3. Retaliation - Prima Facie Case

To establish a prima facie case of retaliation, the plaintiff must show that: (1) she engaged in activity protected under Title VII; (2) the defendant knew that she engaged in the protected activity; (3) the defendant subsequently took an adverse, retaliatory action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) the protected activity and the adverse action were causally connected. Smith v. City of Salem, 378 F.3d 566, 570 (6th Cir. 2004); Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000).

Defendant says that Burrows cannot make out a prima facie case because there is no evidence that any of defendant's actions were taken because of Burrows' protected activity. The Court agrees. The record is devoid of any evidence of a causal connection between Burrows' EEO activity and the actions she challenges here.

### 4. Legitimate Non-Discriminatory Reason

11

Even if Burrows could make out a prima facie case of discrimination based on race, gender, disability or a claim for retaliation, defendant is still entitled to summary judgment because it had legitimate reasons for taking all of the actions which form the basis for her claims. She was ordered to return to work based on Dr. Klarman's evaluation that she was able to do so. She declined an opportunity to undergo another examination and refused to return to work. Her request for annual leave was denied because there were no openings for leave under the agreement with the union regarding bidding on leave. Burrows has no evidence to the contrary. The notice of removal was issued after Burrows was warned that a refusal to return to work could result in removal. She challenged her removal through the grievance process and was unsuccessful at every step. The cancellation of her health and life insurance benefits was consistent with postal regulations, the legitimacy of which is not in dispute.

Finally, the ALJ's comprehensive 27 page decision carefully and fully explains how none of defendant's actions were discriminatory on the basis of race, gender, or disability or in retaliation for Burrows' EEO activity.

Burrows filed a detailed response to defendant's motion as well as a response to defendant's reply brief. The Court carefully considered her filings. From what could be gleaned, her papers contained long recitations of the law and the facts as she alleges, but did not contain evidence to support her claims sufficient to survive summary judgment.

V.  Conclusion

For the reasons stated above, defendant's motion for summary judgment is GRANTED.

SO ORDERED.

                                             s/Avern Cohn
                                             AVERN COHN
                                             UNITED STATES DISTRICT JUDGE

Dated:  August 17, 2006

I hereby certify that a copy of the foregoing document was mailed to the parties and Yolanda Burrows, 21638 Hidden River Dr. S., Southfield, MI 48075  record on this date, August 17, 2006, by electronic and/or ordinary mail.

                                             s/Julie Owens
                                             Case Manager, (313) 234-5160